FILED

2025 Sep-24  AM 11:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

KIMBERLY A. WHITAKER,      )
         )
    Plaintiff,        )
         )
    v.         )   Case No. 6:24-cv-01163-NAD
         )
SOCIAL SECURITY      )
ADMINISTRATION,      )
COMMISSIONER,      )
         )
    Defendant.      )

## MEMORANDUM OPINION AND ORDER
## AFFIRMING THE DECISION OF THE COMMISSIONER

Pursuant to 42 U.S.C. § 405(g), Plaintiff Kimberly A. Whitaker appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for disability insurance benefits (DIB).  Doc. 1. Plaintiff Whitaker applied for benefits with an alleged onset date of June 11, 2021. Doc. 7-4 at 3.  The Commissioner denied Whitaker's claim for benefits.  Doc. 7-3 at 2, 12–19.  In this appeal, the parties consented to magistrate judge jurisdiction.  Doc. 26; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **AFFIRMS** the Commissioner's decision.

## ISSUES FOR REVIEW

In this appeal, Whitaker argues that substantial evidence does not support the

1

decision of the Administrative Law Judge (ALJ).  Doc. 15 at 8–9.  Whitaker also argues that the Appeals Council failed to properly consider new evidence.  Doc. 15 at 9–12.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving disability.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To qualify for disability benefits, a claimant must show disability, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505.

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages:    (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the

administrative process, the ALJ follows a five-step sequential analysis to determine

whether the claimant is disabled.  The ALJ must determine the following:

(1)    whether the claimant is engaged in substantial gainful activity;

(2)    if not, whether the claimant has a severe impairment or combination of impairments;

(3)    if so, whether that impairment or combination of impairments meets or equals any "Listing of Impairments" in the Social Security regulations;

(4)    if not, whether the claimant can perform his past relevant work in light of his "residual functional capacity" or "RFC"; and,

(5)    if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Winschel v. Commissioner of Soc.*

*Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to

demonstrate both a qualifying disability and an inability to perform past relevant

work." *Moore*, 405 F.3d at 1211.  At step five of the inquiry, the burden temporarily

shifts to the Commissioner "to show the existence of other jobs in the national

economy which, given the claimant's impairments, the claimant can perform."

*Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018)

(quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  If the

Commissioner makes that showing, the burden then shifts back to the claimant to

show that he cannot perform those jobs. *Id.* So, while the burden temporarily shifts to the Commissioner at step five, the overall burden of proving disability always remains on the claimant. *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim under the Social Security Act. The court reviews the Commissioner's decision to determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

A.    With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar). If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the

Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "The ALJ must rely on the full range of evidence . . . , rather than cherry picking records from single days or treatments to support a conclusion." *Cabrera v. Commissioner of Soc. Sec.*, No. 22-13053, 2023 WL 5768387, at *8 (11th Cir. Sept. 7, 2023).

**B.**     With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999. And the Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## BACKGROUND

### A.     Procedural background

On December 1, 2021, Whitaker filed an application for disability insurance

benefits (DIB), alleging disability beginning on June 11, 2021.  Doc. 7-4 at 9–10.

Whitaker's application was denied at the initial level (and on reconsideration).  Doc.

7-4 at 8, 19.  Following the initial denial of her claim, Whitaker requested a hearing

before an ALJ.  Doc. 7-3 at 12.  After Whitaker agreed to appear by telephone, the

ALJ held a telephonic hearing on August 16, 2023.  Doc. 7-3 at 12.  On September

29, 2023, the ALJ issued an unfavorable decision.  Doc. 7-3 at 19.

The Appeals Council denied Whitaker's request for review.  Doc. 7-3 at 2.

Because the Appeals Council found no reason to change the ALJ's decision, the

ALJ's decision became the final decision of the Commissioner on July 1, 2024.  Doc.

7-3 at 2; *see* 42 U.S.C. § 405(g).

## B.    Factual background and ALJ hearing

Whitaker was born on June 22, 1968.  Doc. 7-4 at 2.

On August 25, 2017, Whitaker had an MRI at Chattanooga Imaging for neck

pain.  Doc. 7-9 at 38.  At C4–C5, C5–C6, and C6–C7, Whitaker had mild to moderate

loss in height of the intervertebral disc, mild disc bulging without canal stenosis or

cord compression, and uncovertebral spurring encroaching upon the neural

foramina.   Doc. 7-9 at 38.   The MRI showed normal cervical spinal cord, no

intraspinal mass, and normal vertebral bodies and marrow signal.  Doc. 7-9 at 39.

On October 4, 2019, Whitaker had an MRI at Cullman Regional for low back

pain and right lower extremity radiculopathy.  Doc. 7-9 at 40.  Mild disc disease was

noted at L1–L2, L2–L3, and L3–L4.  Doc. 7-9 at 40.  A small circumferential disc bulge with advanced facet arthropathy was found at L4–L5, and a large right paracentral disc herniation was found at L5–S1.  Doc. 7-9 at 40.

On July 1, 2020, Whitaker visited Pain & Rehabilitation Consultants for neck and shoulder pain, and low back, hip, and lower extremity pain.  Doc. 7-10 at 123. Whitaker reported 80% relief from her right lumbar MBB #1 on June 17, 2020.  Doc. 7-10 at 124.  Whitaker reported that she was able to increase her activities and that the worst area of her pain was in her neck, with radiating pain to the top of her shoulder blade.  Doc. 7-10 at 124.  Whitaker also reported lower back pain.  Doc. 7-10 at 124.  Whitaker reported 65–70% relief taking Norco.  Doc. 7-10 at 124.

On July 29, 2020, Whitaker visited Pain & Rehabilitation Consultants for neck and shoulder pain and low back, hip, and lower extremity pain.  Doc. 7-10 at 129. Whitaker reported 80% relief from her right lumbar MBB #1 on June 17, 2020.  Doc. 7-10 at 130.  Whitaker reported mild back pain with radiating pain to the bilateral hips.  Doc. 7-10 at 130.  Whitaker reported 70% relief taking Norco.  Doc. 7-10 at 130.

On August 26, 2020, Whitaker visited Pain & Rehabilitation Consultants for neck and shoulder pain and low back, hip, and lower extremity pain.  Doc. 7-10 at 136.  Whitaker reported that her worst area of pain was at the top of her neck/back of her head with shooting pain to her right shoulder.  Doc. 7-10 at 137.  Whitaker

also reported right lower back pain radiating to her right buttock.  Doc. 7-10 at 137.

Whitaker reported 70% relief taking Norco.  Doc. 7-10 at 137.

On October 2, 2020, Whitaker visited Southern Wellness for an initial visit.

Doc. 7-9 at 31.  Whitaker presented with chronic pain.  Doc. 7-9 at 33.  Whitaker

reported neck pain and back pain.  Doc. 7-9 at 33.  Whitaker's blood pressure was

151/114.  Doc. 7-9 at 34.  Whitaker reported that her pain was an 8 out of 10 without

medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 35.

On November 6, 2020, Whitaker visited Southern Wellness for a follow-up

visit.  Doc. 7-9 at 27.  Whitaker was noted to have chronic pain.  Doc. 7-9 at 29.

Whitaker's blood pressure was 122/100.  Doc. 7-9 at 29.  Whitaker reported no new

physical or psychological problems and no problems with medication.  Doc. 7-9 at

29.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4

out of 10 fully medicated.  Doc. 7-9 at 29.

On December 5, 2020, Whitaker visited Southern Wellness for a follow-up

visit.  Doc. 7-9 at 22.  Whitaker was noted to have chronic pain.  Doc. 7-9 at 25.

Whitaker's blood pressure was 154/107.  Doc. 7-9 at 25.  Whitaker reported no new

physical or psychological problems and no problems with medication.  Doc. 7-9 at

25.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4

out of 10 fully medicated.  Doc. 7-9 at 25.

On December 29, 2020, Whitaker visited Capstone Rural Health requesting a

steroid shot.  Doc. 7-10 at 78.  Whitaker presented to the clinic for refills of medications and complaining of low back pain.  Doc. 7-10 at 80.

On January 9, 2021, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-9 at 18.  Whitaker was noted to have chronic pain.  Doc. 7-9 at 20.  Whitaker's blood pressure was 154/95.  Doc. 7-9 at 20.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 20.

On January 28, 2021, Whitaker visited Capstone Rural Health for a pulled hamstring in her right thigh, after she fell on a slick area outside.  Doc. 7-10 at 76.

On February 6, 2021, Southern Wellness conducted a telephonic interview with Whitaker.  Doc. 7-9 at 15.  Whitaker was noted to have chronic pain.  Doc. 7-9 at 16.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 16.

On March 6, 2021, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-9 at 11.  Whitaker was noted to have chronic pain.  Doc. 7-9 at 13.  Whitaker's blood pressure was 166/104.  Doc. 7-9 at 13.  Whitaker reported no new physical or psychological problems and no problems with medication.  Doc. 7-9 at 13.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 13.

On April 3, 2021, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-9 at 9.  "Stomach bug" was listed as a new physical problem for Whitaker.

Doc. 7-9 at 9.  Whitaker's blood pressure was 164/103, with a note "to see PCP."

Doc. 7-9 at 9.  Whitaker reported that her pain was an 8 out of 10 without medication

and a 4 out of 10 fully medicated.  Doc. 7-9 at 9.

On May 8, 2021, Whitaker visited Southern Wellness for a follow-up visit.

Whitaker reported no problems with medication.  Doc. 7-9 at 5.  Whitaker was noted

to have chronic pain.  Doc. 7-9 at 5.  Whitaker's blood pressure was 155/106, with

a note "to see PCP." Doc. 7-9 at 5.  Whitaker reported that her pain was an 8 out of

10 without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 5.

On July 10, 2021, Whitaker visited Southern Wellness for a follow-up visit.

Doc. 7-9 at 49.  Whitaker's blood pressure was 143/89, and Whitaker reported no

problems with medication.  Doc. 7-9 at 51.  Whitaker reported that her pain was an

8 out of 10 without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 51.

On August 7, 2021, Whitaker visited Southern Wellness for a follow-up visit.

Doc. 7-9 at 45.  Whitaker's blood pressure was 177/102, and she reported that she

was not sleeping well.  Doc. 7-9 at 47.  Whitaker reported no problems with

medication.  Doc. 7-9 at 47.  Whitaker reported that her pain was an 8 out of 10

without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 47.

On September 4, 2021, Whitaker visited Southern Wellness for a follow-up

visit.  Doc. 7-9 at 42.  Whitaker's drug screen showed THC.  Doc. 7-9 at 42.

Whitaker's blood pressure was 141/96.  Doc. 7-9 at 44.  Whitaker reported no

problems with medication and no new physical or psychological problems.  Doc. 7-9 at 44.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 44.

On October 7, 2021, Whitaker visited Southern Wellness for a follow-up visit.  Doc. 7-9 at 77.  Whitaker's drug screen showed THC.  Doc. 7-9 at 77.  Whitaker's blood pressure was 174/106.  Doc. 7-9 at 79.  Whitaker reported no new physical or psychological problems and no problems with medication.  Doc. 7-9 at 79.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 79.

On November 5, 2021, Whitaker visited Southern Wellness for a follow-up visit.  Doc. 7-9 at 73.  Whitaker's blood pressure was 172/98, and Whitaker reported that she was seeing a doctor on November 8, 2021, about her blood pressure.  Doc. 7-9 at 75.  Whitaker reported no new physical or psychological problems and no problems with medication.  Doc. 7-9 at 75.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 75.

On December 10, 2021, Whitaker visited Southern Wellness for a follow-up visit.  Doc. 7-9 at 69.  Whitaker's blood pressure was 180/114, and she reported no new physical or psychological problems.  Doc. 7-9 at 71.  Whitaker reported problems with refilling her medications.  Doc. 7-9 at 71.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated.  Doc.

7-9 at 71.

On December 31, 2021, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-9 at 108. Whitaker's blood pressure was 160/90. Doc. 7-9 at 110. Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-9 at 110. Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated. Doc. 7-9 at 110.

On January 28, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-9 at 104. Whitaker's blood pressure was 145/98. Doc. 7-9 at 106. Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-9 at 106. Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated. Doc. 7-9 at 106.

On February 23, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-9 at 100. Whitaker's blood pressure was 160/96. Doc. 7-9 at 102. Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-9 at 102. Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated. Doc. 7-9 at 102.

On March 24, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-9 at 96. Whitaker's blood pressure was 151/91. Doc. 7-9 at 98. Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-9 at 98. Whitaker reported that her pain was an 8 out of 10

without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 98.

On April 8, 2022, Whitaker visited Capstone Rural Health for hypertensive disorder.  Doc. 7-9 at 128.  Whitaker's medications included acyclovir, albuterol sulfate HFA, Celebrex, desvenlafaxine succinate ER, Gabapentin, Hydrocodone, losartan, and meclizine.  Doc. 7-9 at 129.  Whitaker's reviewed problems were hypertensive disorder, asthma, cigarette smoker, and depressive disorder.  Doc. 7-9 at 129.  Whitaker reported that she was able to care for herself and had no difficulty concentrating, remembering, making decisions, walking, or climbing stairs, dressing or bathing, or doing errands alone.  Doc. 7-9 at 130.  Whitaker reported that she walks without restrictions.  Doc. 7-9 at 130.  Whitaker reported that she did not feel stressed, tense, restless, nervous, anxious, or unable to sleep at night.  Doc. 7-9 at 130.  Whitaker showed good judgment, normal mood and affect, and was active and alert.  Doc. 7-9 at 131.  Whitaker was oriented to time, place, and person, and her recent and remote memory were normal.  Doc. 7-9 at 131.  Whitaker reported sciatic nerve pain in her right lower back.  Doc. 7-9 at 131.

On April 28, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-9 at 142.  Whitaker's blood pressure was 108/72.  Doc. 7-9 at 144.  Whitaker reported no new physical or psychological problems and no problems with medication.  Doc. 7-9 at 144.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated.  Doc. 7-9 at 144.

13

On June 3, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-9 at 138. Whitaker's blood pressure was 137/86. Doc. 7-9 at 140. Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-9 at 140. Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated. Doc. 7-9 at 140.

On July 9, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-9 at 134. Whitaker's blood pressure was 144/96. Doc. 7-9 at 136. Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-9 at 136. Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated. Doc. 7-9 at 136.

On July 19, 2022, Whitaker presented to Capstone Rural Health for PAP, breast examination, and XN labs. Doc. 7-10 at 67. Whitaker reported sciatic nerve pain in her right lower back. Doc. 7-10 at 67.

On August 3, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-10 at 59. Whitaker's blood pressure was 164/94. Doc. 7-10 at 61. Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-10 at 61. Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated. Doc. 7-10 at 61.

On August 31, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-10 at 55. Whitaker's blood pressure was 169/99. Doc. 7-10 at 57.

14

Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-10 at 57. Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated. Doc. 7-10 at 57.

On October 7, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-10 at 51. Whitaker's blood pressure was 150/90. Doc. 7-10 at 53. Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-10 at 53. Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated. Doc. 7-10 at 53.

On November 4, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-10 at 47. Whitaker's blood pressure was 121/77. Doc. 7-10 at 49. Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-10 at 49. Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated. Doc. 7-10 at 49.

On November 11, 2022, Whitaker attended a telehealth appointment with Capstone Rural Health for depressive disorder and hypertensive disorder. Doc. 7-10 at 16. No physical examination was performed. Doc. 7-10 at 18.

On December 2, 2022, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-10 at 43. Whitaker's blood pressure was 150/77. Doc. 7-10 at 45. Whitaker reported no new physical or psychological problems and no problems with medication. Doc. 7-10 at 45. Whitaker reported that her pain was an 8 out of 10

without medication and a 4 out of 10 fully medicated.  Doc. 7-10 at 45.

On January 6, 2023, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-10 at 39.  Whitaker's blood pressure was 150/90.  Doc. 7-10 at 41.  Whitaker reported no new physical or psychological problems and no problems with medication.  Doc. 7-10 at 41.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated.  Doc. 7-10 at 41.

On January 12, 2023, Whitaker underwent a Social Security Disability Consultative Examination with Valerie Danette Sanford, CRNP.  Doc. 7-9 at 165–71.  Whitaker's chief complaints were cervical spondylosis, L4 slipped disk, herniated disk L5–S1, chronic pain, hypertension, depression, anxiety, and spondylolisthesis.  Doc. 7-9 at 165.  Whitaker reported that she has daily lumbar disc pain, and that she had a cervical epidural that "helped some but recently has not helped."  Doc. 7-9 at 165.  Whitaker stated that the pain awakened her at night.  Doc. 7-9 at 165.  Whitaker reported that NSAIDs did not help and that she used ice to get some relief.  Doc. 7-9 at 165.  Whitaker reported that she had difficulty sitting, standing, and walking.  Doc. 7-9 at 165.  Whitaker reported that she was dependent on others for cooking/meal prep, housekeeping and laundry, shopping/banking, and driving, but that she acted independently for personal care such as bathing and dressing.  Doc. 7-9 at 166.  Whitaker showed difficulty getting on and off the examination table, walking on heels, walking on toes, and squatting and rising.  Doc.

7-9 at 168–69.  Whitaker's gait and station were unsteady, and she used a cane for ambulation.  Doc. 7-9 at 169.

On January 18, 2023, Whitaker attended a mental status examination with Jennifer Terry, a certified counselor.  Doc. 7-9 at 173–77.  Whitaker reported depression and anxiety "due to not working."  Doc. 7-9 at 173.  Whitaker reported that she lives with her mother, father, and husband, and that she dusts and does "light light" housework.  Doc. 7-9 at 174.  Whitaker reported that she takes no medication for her mental health and does not receive counseling.  Doc. 7-9 at 174.  Whitaker was calm throughout the examination, and she was alert and oriented in all spheres. Doc. 7-9 at 174.  Whitaker reported that she needs assistance with bathing, grooming, and dressing due to her mental health.  Doc. 7-9 at 175.  Terry found that Whitaker had no mental health diagnosis.  Doc. 7-9 at 176.

On February 3, 2023, Whitaker visited Southern Wellness for a follow-up visit.  Doc. 7-10 at 36.  Whitaker reported no new physical or psychological problems and no problems with medication.  Doc. 7-19 at 37.  Whitaker reported that her pain was an 8 out of 10 without medication and a 4 out of 10 fully medicated. Doc. 7-10 at 37.

On February 10, 2023, Whitaker attended an appointment at Capstone Rural Health for hypertensive disorder.  Doc. 7-10 at 10.  Whitaker reported that she had no difficulty concentrating, remembering, making decisions, walking, or climbing

stairs, dressing or bathing, or doing errands alone.  Doc. 7-10 at 12.  Whitaker reported that she walks without restrictions.  Doc. 7-10 at 12.  Whitaker said that she did not feel stressed, tense, restless, nervous, anxious, or unable to sleep at night. Doc. 7-10 at 7.  Whitaker's gait and station were normal, and Whitaker showed good judgment, and normal mood and affect.  Doc. 7-10 at 13.

On March 31, 2023, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-10 at 32.  Whitaker's treatment plan showed hydrocodone acetaminophen. Doc. 7-10 at 32.

On April 27, 2023, Whitaker visited Southern Wellness for a follow-up visit. Doc. 7-10 at 30.  Notes show that Whitaker was "doing well" and had "no new problems."  Doc. 7-10 at 30.

On May 9, 2023, Whitaker attended an appointment at Capstone Rural Health for hypertensive disorder.  Doc. 7-10 at 4.  Whitaker reported that she had no difficulty concentrating, remembering, making decisions, walking, or climbing stairs, dressing or bathing, or doing errands alone.  Doc. 7-10 at 6.  Whitaker reported that she walks without restrictions.  Doc. 7-10 at 6.  Whitaker reported that she did not feel stressed, tense, restless, nervous, anxious, or unable to sleep at night.  Doc. 7-10 at 7.  Whitaker's gait and station were normal, and Whitaker showed good judgment, and normal mood and affect.  Doc. 7-10 at 7.

On May 25, 2023, Whitaker visited Southern Wellness for a follow-up visit.

Doc. 7-10 at 29.  Notes show that Whitaker's "thyroid [was] being investigated" but that she was "otherwise well."  Doc. 7-10 at 29.

On August 16, 2023, the ALJ held a telephonic hearing on Whitaker's application for DIB.  Doc. 7-3 at 43.

Whitaker testified that, of her neck and back, her low back bothers her the most.  Doc. 7-3 at 46.  Whitaker testified that she has a slipped disc at L4 and a herniated disc at L5–S1.  Doc. 7-3 at 46.  With her neck, Whitaker testified that she gets occipital headaches.  Doc. 7-3 at 46.

Whitaker also testified that, on a typical day in the late afternoon, her pain is probably a 6 out of 10 with pain medication.  Doc. 7-3 at 47.  Whitaker testified that she takes Gabapentin, Baclofen, and Norco.  Doc. 7-3 at 47.

Whitaker testified further that she could lift 3 to 5 pounds without hurting herself.  Doc. 7-3 at 47.  Whitaker testified that she could not lift a gallon of milk without experiencing pain in her "low right back."  Doc. 7-3 at 47–48.

Whitaker testified that she cannot bend, stoop, or twist, and that she can only sit in a desk chair for 5 minutes without needing to move around because of pain.  Doc. 7-3 at 48–49.  Whitaker testified that she can stand for 5 to 10 minutes and can walk for 3 to 5 minutes.  Doc. 7-3 at 49.

When asked about the note that Whitaker was ambulating with a cane at her consultative examination, Whitaker testified that she has never used a cane.  Doc. 7-

3 at 49.

Whitaker testified that she has to lie down because of pain "for around five hours" from 8:00 a.m. in the morning until 5:00 p.m. in the evening. Doc. 7-3 at 50. Whitaker testified that she has trouble sleeping because of her pain, and that she tries to stretch and walk around to help ease the pain. Doc. 7-3 at 50.

Whitaker also testified that she lives with her husband and her parents. Doc. 7-3 at 51. Whitaker testified, as to household chores, that she helps her mother with "light sanitizing" and "light dusting," but that she cannot push a vacuum cleaner or stand to wash dishes for an extended period of time. Doc. 7-3 at 50. Whitaker testified that she could wash dishes for about 5 minutes before stopping to rest. Doc. 7-3 at 51.

Whitaker testified further that she has occipital headaches 2 to 3 times per month for 3 to 4 hours. Doc. 7-3 at 51. Whitaker testified that the occipital headaches cause nausea that "comes and goes." Doc. 7-3 at 52.

Whitaker testified that she has general anxiety that is triggered by stress but that she does not have issues with social anxiety and crowds. Doc. 7-3 at 53.

Whitaker also testified that she previously worked as a front desk receptionist at various medical offices. Doc. 7-3 at 54. As a front desk receptionist, Whitaker testified that she did patient intake, dealt with insurance and billing issues, and checked patients out after their visits. Doc. 7-3 at 54. Whitaker testified that she

20

lifted 5 or 10 pounds as a receptionist, and at her last two jobs she would put a block of ice "underneath [her] right buttocks area" to help with pain while she worked. Doc. 7-3 at 55.

Whitaker testified further that her mother cooks and handles the grocery shopping. Doc. 7-3 at 56–57. Whitaker testified that if she goes grocery shopping with her mother she "[has] to sit . . . on the bottom shelf . . . to rest." Doc. 7-3 at 57.

Whitaker testified that she does not do any activities with her husband outside of the house. Doc. 7-3 at 58.

Vocational Expert (VE) Robert Moseley testified that a hypothetical individual with Whitaker's age, education, work experience, and the limitations posed by the ALJ could perform her past work as a receptionist. Doc. 7-3 at 59–62.

## C.   ALJ decision

On September 29, 2023, the ALJ entered an unfavorable decision. Doc. 7-3 at 12–19. In the decision, the ALJ concluded that Whitaker "has not been under a disability, as defined in the Social Security Act, from June 11, 2021, through the date of this decision." Doc. 7-3 at 18.

The ALJ applied the five-part sequential test for disability (*see* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Winschel*, 631 F.3d at 1178). Doc. 7-3 at 13–14. The ALJ found that Whitaker has not engaged in substantial gainful activity since June 11, 2021. Doc. 7-3 at 14. The ALJ found that Whitaker has severe impairments of

lumbar degenerative disc disease with radiculopathy, cervical degenerative disc disease, and occipital neuralgia. Doc. 7-3 at 14. The ALJ also found that Whitaker has the nonsevere impairments of hypertension, which is "well-controlled," and "mild" asthma. Doc. 7-3 at 14.

As to Whitaker's medically determinable mental impairments, the ALJ found that Whitaker's depression and anxiety "considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Doc. 7-3 at 15. The ALJ found that Whitaker has mild limitations in the four broad functional areas set out in the Social Security regulations for evaluating mental disorders. Doc. 7-3 at 15.

The ALJ then found that Whitaker did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the applicable Social Security regulations. Doc. 7-3 at 15–16.

The ALJ then determined Whitaker's residual functional capacity (RFC), finding that Whitaker could "perform light work" as defined in the regulations, except that she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and that Whitaker could have occasional exposure to extreme temperatures but should avoid unprotected heights and hazardous machines. Doc. 7-2 at 16.

In assessing Whitaker's RFC and the extent to which her symptoms limited

22

her function, the ALJ stated that the ALJ "must follow" the required "two-step process": (1) "determine[] whether there is an underlying medically determinable physical or mental impairment[] . . . that could reasonably be expected to produce the claimant's pain or other symptoms"; and (2) "evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities." Doc. 7-3 at 16. The ALJ also stated that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities." Doc. 7-3 at 16.

In finding Whitaker's RFC, the ALJ considered information from Whitaker's medical records and hearing testimony regarding the limitations from her impairments, including testimony that Whitaker experiences back pain, high blood pressure, depression, and anxiety, and that "her low back pain is the most disabling." Doc. 7-3 at 16. The ALJ considered Whitaker's testimony that she has 2 to 3 headaches per month due to neck pain, and that she rated her pain a 6 out of 10 daily with pain medications. Doc. 7-3 at 16. The ALJ also considered Whitaker's testimony that she can lift about 5 pounds, can sit for 5 minutes, can stand for 10 minutes, and can walk for 5 minutes. Doc. 7-3 at 16. The ALJ considered Whitaker's testimony that she has difficulty sleeping but that she can "rest, stretch,

23

and be mobile to help with her pain" and "can help with chores around the house." Doc. 7-3 at 16.

After considering the record and subjective allegations, the ALJ found that Whitaker's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms but that Whitaker's "statements regarding the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Doc. 7-3 at 16.

The ALJ found that Whitaker has a history of mild to moderate multilevel cervical degenerative disc disease with associated posterior mild disc bulging and bilateral uncovertebral spurring encroaching upon the neural foraminal. Doc. 7-3 at 17. The ALJ found that imaging showed right paracentral disc herniation and mild disc disease of the lumbar spine. Doc. 7-3 at 17. The ALJ found that Whitaker has also been treated for occipital neuralgia. Doc. 7-3 at 17.

The ALJ summarized the evidence underlying the ALJ's decision, finding that Whitaker "sought treatment with Dr. Normal McCoomer where she had an abnormal gait and station with some limited range of motion in the cervical spine." Doc. 7-3 at 17. The ALJ found that Whitaker received injections for her pain and reported that she had 70% pain relief. Doc. 7-3 at 17. The ALJ found that, when Whitaker began therapy at Southern Wellness in 2020, she reported that prior injections "had

not been helpful and that her pain resulted in decreased activity and decreased ability to stand or walk for long periods and to bend or lift much." Doc. 7-3 at 17. The ALJ found that Whitaker has been treated with Norco, Baclofen, Celebrex, and Gabapentin. Doc. 7-3 at 17. The ALJ found that, despite Whitaker's complaints of sciatic pain, primary care records from 2020 showed that Whitaker "had normal ambulation, normal movement, normal muscle tone and strength, and normal respiratory findings." Doc. 7-3 at 17.

The ALJ also found that Southern Wellness records from 2022 showed that Whitaker "continued to have pain that was rated a 4 with medication," and that she "reported she was able to perform some household work and estimated that she had 70% total improvement in her symptoms." Doc. 7-3 at 17. The ALJ found that Whitaker "reported to her primary care physician that she was able to care for herself," and "had no problems climbing stairs, walking, dressing, bathing, or running errands." Doc. 7-3 at 17. The ALJ found further that Whitaker "was able to walk without restrictions," and that, "[o]n examination, she had normal ambulation, normal respirations, normal tone, normal strength, normal joints, normal bones, normal muscles, normal gait, and normal station," but that she "continued to report some sciatic nerve pain in the right lower back." Doc. 7-3 at 17.

The ALJ found that Whitaker presented to Nurse Practitioner Palmer-Sanford

for a consultative examination in 2023. Doc. 7-3 at 17. The ALJ found that, during the examination, Whitaker alleged difficulty with sitting, standing, walking, and staying in one position for long. Doc. 7-3 at 17. The ALJ found that Whitaker was in no acute distress, had clear lungs, and showed no signs of respiratory distress. Doc. 7-3 at 17. The ALJ also found that Whitaker had tenderness on palpation of spinous process, that her paraspinal muscles were tender, and that she had negative straight leg raising and full strength. Doc. 7-3 at 17. The ALJ found further that Whitaker had normal reflexes but had difficulty getting on and off the examination table, walking on her heels, walking on her toes, squatting, and rising. Doc. 7-3 at 17. The ALJ found that Nurse Practitioner Palmer-Sanford opined that Whitaker needed a cane for balance and was medically necessary, and that Whitaker was unable to stoop, bend, or twist due to degenerative joint disease with disc herniation. Doc. 7-3 at 17. The ALJ also found that Whitaker had reduced range of motion in the cervical spine but full range of motion elsewhere. Doc. 7-3 at 17. The ALJ found further that additional 2023 records showed that Whitaker "had a normal gait and station, normal strength, and no new problems." Doc. 7-3 at 17.

With respect to Whitaker's RFC, the ALJ found that "a limitation to light work is supported by [Whitaker's] objective findings on examination and on her reports to other healthcare providers." Doc. 7-3 at 17. The ALJ found that imaging "has shown mild to moderate impairment, and despite some limitation in range of motion

on examination, [Whitaker] has reported a significant improvement with treatment." Doc. 7-3 at 17.  The ALJ found that Whitaker "has been able to help with some housework at her parents' home, and she has reported that she is able to climb stairs, walk, dress, bathe, and run errands."  Doc. 7-2 at 17.

The ALJ found that "[n]otably, [Whitaker] testified that she has never needed a cane, and there is no mention of a medical device except in the consultative examination report."  Doc. 7-3 at 17–18.  The ALJ was "not persuaded by the opinion of Nurse Practitioner Palmer-Sanford," as there "is no evidence to support [Whitaker's] need for a cane."  Doc. 7-3 at 18 ("Indeed, the claimant testified that she does not use a cane.").  The ALJ found that "the record does not support a complete inability to bend, stoop, or twist" and that, "even if these limitations were supported and included in the residual functional capacity, the vocational expert testified that an individual would be able to perform [Whitaker's] past relevant work with these limitations."  Doc. 7-3 at 18.

The ALJ also found that Whitaker "is capable of performing past relevant work as a receptionist" because "[t]his work does not require the performance of work-related activities precluded by [Whitaker's] residual functional capacity." Doc. 7-3 at 18.  The ALJ found that Whitaker's "past job fulfils the requirements for past relevant work because it was substantial gainful activity performed within the last 15 years for a sufficient amount of time to have learned the techniques, to have

acquired information, and to have developed the facility needed for average performance in the job situation." Doc. 7-3 at 18.

The ALJ then compared Whitaker's RFC with the physical and mental demands of her past work and found that Whitaker was "able to perform it as actually and generally performed." Doc. 7-3 at 18.

Consequently, the ALJ determined that Whitaker has not been under a disability, as defined in the Social Security Act, from June 11, 2021, through the date of the ALJ's decision. Doc. 7-3 at 18.

### D. Additional evidence that Whitaker submitted to the Appeals Council

After the ALJ issued that decision, Whitaker submitted additional evidence for review to the Appeals Council.

Whitaker submitted an MRI report dated November 2, 2023, where Whitaker visited Express MRI for a lumbar spine MRI. Doc. 7-3 at 38. Whitaker complained of low back pain "that radiates around belt line and into the right hip/leg area." Doc. 7-3 at 38. The MRI showed that the L1–L2 disc space demonstrated a small to moderate size right paracentral disc protrusion with mild spondylosis and hypertrophy of the ligamentum flavum. Doc. 7-3 at 38. The L2–L3 disc space demonstrated mild spondylosis and hypertrophy of the ligamentum flavum. Doc. 7-3 at 38. The L3–L4 disc space demonstrated a small to moderate size disc protrusion with mild spondylosis and hypertrophy of the ligamentum flavum. Doc. 7-3 at 38.

The L4–L5 disc space demonstrated first degree spondylolisthesis with about 3 mm of anterolisthesis of L4 on L5, with moderate size disc protrusion with mild spondylosis and hypertrophy of the ligamentum flavum.  Doc. 7-3 at 38.  The L5–S1 disc space demonstrated a moderate size disc protrusion in the right lateral recess with mild spondylosis and hypertrophy of the ligamentum flavum.  Doc. 7-3 at 38. The physician summarized that the findings from the MRI "may result in pain, stiffness, numbness, tingling, and/or burning in your lower back and/or both legs." Doc. 7-3 at 39.

### E.    Appeals Council decision

On July 1, 2024, the Appeals Council denied Whitaker's request for review. Doc. 7-3 at 2.  The Appeals Council found no reason to review the ALJ's decision, and the ALJ's decision became the final decision of the Commissioner.  Doc. 7-3 at 2.

The Appeals Council reviewed the radiology report from Express MRI dated November 2, 2023 (discussed above), as additional evidence.  Doc. 7-3 at 3.

The Appeals Council stated:  "We receive additional evidence that you show is new, material, and relates to the period on or before the date of the hearing decision.  You must also show there is a reasonable probability that the additional evidence would change the outcome of the decision.  You must show good cause for why you missed informing us about or submitting it earlier."  Doc. 7-3 at 3.

The Appeals Council then stated that Whitaker "submitted a Radiology Report from Express MRI dated November 2, 2023 (3 pages)." Doc. 7-3 at 3. The Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision," and "did not exhibit this evidence." Doc. 7-3 at 3.

## DISCUSSION

Having carefully considered the record and briefing, the court concludes that the ALJ's decision was supported by substantial evidence and based on proper standards. The court also concludes that the Appeals Council did not err in denying Whitaker's request for review.

I.    **The ALJ's decision was supported by substantial evidence and based on proper legal standards.**

The ALJ's unfavorable decision denying benefits was supported by substantial evidence and based on proper legal standards. Whitaker argues that the ALJ's finding that she can perform work is not supported by substantial evidence (Doc. 15 at 8–9), that the "evidence supports a finding that [she] is disabled," and that "the ALJ's decision that [she] can perform work at the light exertional level is not supported by substantial evidence considering the radiological records, which unequivocally show [her] repeatedly reported [symptoms] are consistent with the condition of her lumbar spine" (Doc. 15 at 12).

The ALJ's decision demonstrates that the ALJ considered Whitaker's medical

records, hearing testimony, and prior administrative medical findings in finding that Whitaker had not been under a disability, as defined in the Social Security Act, from June 11, 2021, through the date of the decision. The ALJ correctly applied the five-step analysis, first finding that Whitaker had not engaged in substantial gainful activity since her alleged onset date of June 11, 2021. Doc. 7-3 at 14.

The ALJ then found that Whitaker had the severe impairments of lumbar degenerative disc disease with radiculopathy, cervical degenerative disc disease, and occipital neuralgia. Doc. 7-3 at 14. The ALJ found that Whitaker has a history of hypertension and asthma. Doc. 7-3 at 14. The ALJ found that Whitaker's asthma has been described as mild, and Whitaker regularly has normal respiratory examinations. Doc. 7-3 at 14. The ALJ also found that Whitaker's hypertension is well-controlled. Doc. 7-3 at 14.

As to Whitaker's medically determinable mental impairments of depression and anxiety, the ALJ found that these impairments, considered singly and in combination, "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." Doc. 7-3 at 15. The ALJ found that Whitaker reported she was anxious because she was not working. Doc. 7-3 at 15. The ALJ considered Whitaker's ability to "help with meal prep, to cook simple meals, and to help with cleaning." Doc. 7-3 at 15. The ALJ also found that Whitaker can shop, drive, read, and visit with others. Doc. 7-3 at 15.

In determining that Whitaker does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in the applicable regulations, the ALJ reviewed the record and found that Whitaker's impairments do not impose limitations as mentioned in the listings. Doc. 7-3 at 16.

The ALJ then correctly followed the evaluation process, including the multi-part pain standard, in finding Whitaker's RFC to perform light work with limitations. Doc. 7-3 at 16.  In making the RFC finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "the medical opinion(s) and prior administrative medical finding(s)."  Doc. 7-3 at 16.

The ALJ's decision addressed Whitaker's back pain, high blood pressure, depression, anxiety, and headaches.  Doc. 7-3 at 16.  But the ALJ found that Whitaker's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record."  Doc. 7-3 at 16.

The ALJ found that Whitaker has a history of mild to moderate multilevel cervical degenerative disc disease with associated posterior mild disc bulging and bilateral uncovertebral spurring encroaching upon the neural foraminal, that imaging also showed right paracentral disc herniation and mild disc disease of the lumbar

spine, and that Whitaker has been treated for occipital neuralgia. Doc. 7-3 at 17. The ALJ found that Whitaker reported 70% pain relief with injections, and that, despite Whitaker's complaints of sciatic pain, she had normal ambulation, normal movement, normal muscle tone and strength, and normal respiratory findings. Doc. 7-3 at 17.

The ALJ considered Whitaker's Southern Wellness records from 2022 that showed she continued to have pain that was rated a 4 with medication, and that Whitaker was able to perform some household work and had 70% total improvement in her symptoms. Doc. 7-3 at 17. The ALJ also considered Whitaker's report to her primary care physician that she was able to care for herself, and had no problems climbing stairs, walking, dressing, bathing, or running errands. Doc. 7-3 at 17. The ALJ considered further evidence that Whitaker was able to walk without restrictions and had normal ambulation, normal respirations, normal tone, normal strength, normal joints, normal bones, normal muscles, normal gait, and normal station. Doc. 7-3 at 17.

The ALJ found that a limitation to light work was supported by Whitaker's objective findings on examination and by her reports to her healthcare providers. Doc. 7-3 at 17. The ALJ found that imaging has shown mild to moderate impairment and that Whitaker has reported a significant improvement with treatment. Doc. 7-3 at 17. The ALJ considered evidence that Whitaker has been able to help with some

housework and can climb stairs, walk, dress, bathe, and run errands.  Doc. 7-3 at 17.

Generally speaking, when considering medical opinions, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel*, 631 F.3d at 1179.  Here, the ALJ was "not persuaded" by the opinion of Nurse Practitioner Palmer-Sanford whose consultative examination report stated that Whitaker used a cane as an assistive device during the examination.  Doc. 7-3 at 18.  The ALJ found that there "[wa]s no evidence to support Whitaker's need for a cane," as Whitaker "testified that she does not use a cane."  Doc. 7-3 at 18.  The ALJ then found that the record did not support Whitaker's complete inability to bend, stop, or twist, and that, even if these limitations were included in Whitaker's RFC, the VE testified that an individual would be able to perform Whitaker's past relevant work with those limitations.  Doc. 7-3 at 18.  Accordingly, when finding Whitaker's RFC, the ALJ properly considered Whitaker's own allegations and testimony about her pain and symptoms, and weighed and explained the weight given to the medical opinions.

Based on the RFC finding, the ALJ found that Whitaker was capable of performing her past relevant work, and not disabled for purposes of the Social Security Act.  Doc. 7-3 at 18–19.

Thus, the ALJ's decision was "supported by substantial evidence and based upon proper legal standards."  *See Lewis*, 125 F.3d at 1439.  Substantial evidence "is

such relevant evidence as a reasonable person would accept as adequate to support a conclusion" (*Crawford*, 363 F.3d at 1158), and the court cannot reweigh the evidence in this regard. *Winschel*, 631 F.3d at 1178. Where the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158.

## II.    The Appeals Council did not err in denying Whitaker's request for review.

The Appeals Council did not err in denying Whitaker's request for review, given the additional evidence that Whitaker submitted. As noted above, Whitaker submitted as additional evidence to the Appeals Council a report from an MRI on November 2, 2023. Doc. 7-3 at 38. Whitaker argues that "the Appeals Council refused to consider the MRI report." Doc. 15 at 10; *see* Doc. 15 at 12 ("The Appeals Council[] fail[ed] to consider the radiology records . . . ."). Whitaker also argues that the "new MRI clearly bolsters [her] reported symptoms" and that her "testimony that she experienced these symptoms prior to knowing the results of the MRI strengthens the credibility of complaints." Doc. 15 at 12. Whitaker argues that "the new MRI results show a reasonable probability of a change in the outcome of the ALJ's decision." Doc. 15 at 12.

"'With a few exceptions, a claimant is allowed to present new evidence at each stage of the administrative process,' including before the Appeals Council." *Washington v. Social Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015)

(quoting *Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007)).  "The Appeals Council will review a case if it 'receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.'"  *Pupo v. Commissioner, Social Security Administration*, 17 F.4th 1054, 1063 (quoting 20 C.F.R. § 416.1470(a)(5)); *see* 20 C.F.R. § 404.970.

"[W]hen the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate."  *Washington*, 806 F.3d at 1321.  "[W]hen reviewing the Appeals Council's refusal to consider additional evidence submitted by the claimant," the question "whether evidence meets the new, material, and chronologically relevant standard is a question of law subject to [the court's] de novo review."  *Id.* at 1320–21 (citations and quotation marks omitted).

However, where the Appeals Council does review (and does not refuse to consider) new evidence, the standard of review is different.  Where the Appeals Council considered the new evidence and still denied review, the court reviews only for whether "the new evidence [the claimant] submitted to the Appeals Council . . . render[ed] the Commissioner's denial of benefits erroneous."  *Mitchell v. Commissioner, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir. 2014) ("The additional evidence was either cumulative of the evidence before the ALJ or was not

chronologically relevant, and none of it undermined the substantial evidence supporting the ALJ's decision." (citing 20 C.F.R. § 416.1470(b)); *see Ingram*, 496 F.3d at 1262 ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.").

In this case, Whitaker submitted to the Appeals Council the MRI report from November 2, 2023—after the ALJ's decision on September 29, 2023.  Doc. 7-3 at 38; *see* Doc. 7-3 at 19.

While Whitaker argues that the Appeals Council "refused to consider" the 2023 MRI report (Doc. 15 at 10), and consequently erred under the Eleventh Circuits' decision in *Washington* (Doc. 15 at 10), the record shows otherwise—here, the Appeals Council *did* consider the additional evidence and then denied review.

As the Eleventh Circuit recognized, *Washington* "[wa]s not a case in which the Appeals Council considered the additional evidence and then denied review." *Washington*, 806 F.3d at 1321 n.5.  Rather, in *Washington*, the Eleventh Circuit "[was] addressing a different issue":  "whether the Appeals Council committed legal error when it *refused* to consider the claimant's additional evidence."  *Id.* (emphasis added).

Here, the Appeals Council considered and addressed the 2023 MRI report, finding that Whitaker "submitted a Radiology Report from Express MRI dated

November 2, 2023." Doc. 7-3 at 3. The Appeals Council then found that "this evidence does not show a reasonable probability that it would change the outcome of the decision." Doc. 7-3 at 3. As a result, the Appeals Council did not *refuse* to consider the additional evidence. Doc. 7-3 at 3.

Furthermore, there is no "reasonable probability" that the 2023 MRI report "would change the outcome of the decision" (*see* 20 C.F.R. § 404.970(a)(5)), and the 2023 MRI report cannot "undermine[] the substantial evidence supporting the ALJ's decision." *See Mitchell*, 771 F.3d at 785.

The ALJ previously had considered an MRI report from October 4, 2019, that Whitaker had submitted. Doc. 7-9 at 40. The 2019 MRI report showed "mild disc disease at each level" of L1–L2, L2–L3, and L3–L4. Doc. 7-9 at 40. Likewise, the 2023 MRI report showed "mild spondylosis and hypertrophy of the ligamentum flavum" at L1–L2, L2–L3, and L3–L4. Doc. 7-3 at 38. At L3–L4, the 2019 MRI report showed "a small right paracentral disc herniation" (Doc. 7-9 at 40), and the 2023 MRI report showed "a small to moderate size disc protrusion" (Doc. 7-3 at 39). At L4–L5, the 2019 MRI report showed "a small circumferential disc bulge with advanced facet arthropathy" (Doc. 7-9 at 40), and the 2023 MRI report showed "a moderate size disc protrusion" (Doc. 7-3 at 38). At L5–S1, the 2019 MRI report showed "a large right paracentral disc herniation" (Doc. 7-9 at 40), while the 2023 MRI report similarly showed "a moderate size disc protrusion in the right lateral

recess" (Doc. 7-3 at 38).

Thus, the 2023 MRI report does not "undermine[] the substantial evidence supporting the ALJ's decision." *See Mitchell*, 771 F.3d at 785. The 2023 MRI report, as well as the 2019 MRI report, is consistent with the ALJ's finding that Whitaker's "imaging has shown mild to moderate impairment" (Doc. 7-3 at 17), and in reviewing for substantial evidence this court cannot "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the Commissioner (*Winschel*, 631 F.3d at 1178 (citation and quotation marks omitted)).

Moreover, the Appeals Council is not required "to discuss new evidence submitted to it when it denies a claimant's request for review." *Mitchell*, 771 F.3d at 784. Nor is the Appeals Council "required to explain its rationale when denying a request for review." *Id.* at 785. Nevertheless, in this case, the Appeals Council did discuss the new evidence and did explain its rationale in denying the request for review. The Appeals Council explained that the 2023 MRI report "d[id] not show a reasonable probability that it would change the outcome of the decision," and so the Appeals Council "did not exhibit this evidence." Doc. 7-3 at 3.

Accordingly, the submission of the 2023 MRI report did not "render the Commissioner's denial of benefits erroneous." *See id.*; *see also Ingram*, 496 F.3d at 1262 ("[A] reviewing court must consider whether that new evidence renders the denial of benefits erroneous.").

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C § 405(g)), the Commissioner's decision is **AFFIRMED**. The court separately will enter final judgment.

**DONE** and **ORDERED** this September 24, 2025.

_____
**NICHOLAS A. DANELLA**
**UNITED STATES MAGISTRATE JUDGE**